IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CEDARCRESTONE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-cv-4673 |
| | § | |
| AFFILIATED COMPUTER | § | |
| SERVICES, LLC, n/k/a XEROX | § | |
| BUSINESS SERVICES, LLC | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT XEROX BUSINESS SERVICES, LLC'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO EXTEND DEADLINES TO SERVE REBUTTAL EXPERT REPORT AND FILE _DAUBERT_ MOTIONS**

The Court should deny CCI's Motion for Leave to extend Deadlines to Serve Rebuttal Expert Report and File _Daubert_ Motions for two reasons.

_**First**_, **Xerox produced the HPQC data that its expert relied upon over six months ago** – well in advance of CCI's deadline to serve original or rebuttal expert reports. Xerox's counsel has repeatedly informed CCI's counsel of this fact. CCI's Motion makes no attempt to explain why the extensive data produced in November 2013, and upon which Xerox's expert actually relied, is insufficient. Instead, this Motion concerns the unfettered access to the overall HPQC native database. The HPQC database contains a significant volume of information that has no conceivable connection to this case – for example, documents relating to the operation of the CIGNA system now, years after CCI's breach of contract and departure from the CIGNA account. Accordingly, CCI's "inability" to access the native HPQC database has no bearing on its ability to issue a rebuttal expert report or to review the actual information upon which Xerox's expert relied. Moreover, CCI's failure to access the HPQC database is entirely of its own

making. HPQC is a free, publicly available software program. When Xerox gave CCI access to the native HPQC database, it provided explicit instructions for downloading the software and accessing the database. CCI's failure to follow these instructions fails to establish the good cause necessary for an extension.

*Second*, on May 13, 2014, Xerox withdrew its designation of Mr. Ritesh Sharma as an unretained technical expert due. Xerox disclosed Mr. Sharma, a third party, as a potential fact witness in January 2013, more than a year ago. Based on Mr. Sharma's employment history and technical knowledge, out of an abundance of caution, Xerox also disclosed Mr. Sharma as a potential unretained technical expert. CCI failed to subpoena Mr. Sharma before Xerox identified him as an unretained expert. Xerox recently decided to withdraw its designation of Mr. Sharma as an unretained expert. Accordingly, there is absolutely no reason to delay the deadline for serving rebuttal expert reports or filing *Daubert* motions due to CCI's inability to depose Mr. Sharma within the discovery deadline.

## ARGUMENT AND AUTHORITIES

1.   CCI's failure to perform its contractual responsibilities and its fraud and malfeasance in connection with the same form the basis of the parties' dispute in this litigation. Xerox hired CCI to upgrade a software system that CIGNA used in connection with its human resources and payroll services ("CIGNA Project"). It is not disputed that CCI possessed specialized experience and expertise in this particular software platform and that Xerox hired CCI because of that expertise. The parties retained information relating to certain CIGNA Project's software code defects in a Hewlett Packard Quality Center ("HPQC") database.[1] On November 6, 2013, ***five months before the deadline for CCI to issue its opening expert report***,

---

[1]   HPQC is a software quality assurance program that assists developers with requirements management, test management, and business process testing for IT and application environments.

Xerox produced a lengthy excel export of the software defect information found in the HPQC database. The HPQC export included over 163,000 cells of information, and provided 34 categories of data for each defect.[2]

2. On April 15, 2014, pursuant to the deadline imposed by the Agreed Amended Scheduling Order (Dkt. 45), Xerox served its expert designations and the report of its technical expert, Todd Trivett. The HPQC Export that Xerox produced on November 6, 2013, includes all of the information and data that Mr. Trivett relies upon and discusses in his report on that topic. Mr. Trivett did not use any other information from HPQC in forming his opinion nor has CCI alleged otherwise.

3. Although Xerox produced the HPQC Export upon which Mr. Trivett relied on November 6, 2103, on April 28, 2014, as a courtesy to CCI and its experts, Xerox also provided CCI's lawyers and experts with direct access to the native HPQC database in read-only format. ***Notably, CCI never requested direct access to this native HPQC database.*** Furthermore, in order to permit CCI's expert time to compare the native HPQC database against data export produced six months earlier, Xerox agreed to extend the May 6 ,2014, deadline to serve rebuttal expert reports to May 20, 2014. Ex. A, May 1, 2014, e-mail from C. Nowak to A. Arcadi.

4. As discussed above, HPQC is a computer program. In order to access it, an individual must first download publicly available software and then enter a user name, password, and site address into the program. When they received their usernames and passwords, both CCI

---

[2] The categories of data are: Assigned To; Defect ID; Priority; Severity; Detected By; Status; SSN/PIN; Sub Status; Summary; Calc Version; Workstream; TBO Sub-Category; Target Resolution Date; Detected in Cycle; Environment; Team Assigned; Comments; Actual_Fix_Time; Description; Closed in Version; Closing Date; Data/Carrier Information; Defect Type; Detected in Release; Detected in Version; Detected on Dat; Estimated_Fix_Time; Modified Date; Planned Closing Version; Project; Reproducible; Subject; Target Cycle; Target Release.

and its experts received a sixteen page welcome packet with instructions for downloading the software and accessing the database. Ex. B, Quality Center 10, Installation of QC Explorer.

5. On May 5, 2014, a full week after Xerox first made HPQC available to CCI and its experts, counsel for CCI informed Xerox that its expert, Mr. Turner, had difficulty accessing HPQC and asked Xerox to provide CCI with a laptop for accessing the program. In response to CCI's request, counsel for Xerox separately tested the ability to access HPQC using a computer with a standard Windows operating system. Following the exact same instructions provided to CCI and its expert, counsel for Xerox downloaded the necessary programs for free, and accessed the database without difficulty using the supplied user name, password, and site address.

6. After confirming that any individual with a Windows XP, Windows Vista, or Windows 7 operating system is capable of accessing the HPQC database using free, publicly available software programs, Xerox declined CCI's request for a Xerox laptop, and instructed CCI to follow the instructions that it received on April 28, 2014, to access the database. To date, CCI has been unable to describe with any reasonable particularity why the provided instructions are insufficient to access HPQC. CCI has also been unable to identify with any specificity why it is unable to download and access a *free* software program.

7. Nonetheless, when CCI once again complained that its "inability" to access the HPQC database impacted the ability of its expert to rebut Xerox's report, in the interest of avoiding unnecessary motion practice before the Court, Xerox again offered to extend the deadline for issuing rebuttal reports. Ex. C, May 12, 2014, e-mail from J. Ayers to T. Hanson. Xerox refused, however, to grant CCI a open-ended, rolling extension that depended upon CCI's willingness or ability to follow the instructions Xerox provided on April 28th. *Id.* Dissatisfied

with an additional, seven day extension to the deadline to issue rebuttal reports, CCI filed the instant Motion. *Id.* (offering to extend the deadline from May 20, 2014 to May 27, 2014).

8. Rule 16(b)(4) governs a party's request to extend the discovery period after the deadline established by a scheduling order has passed. To modify the scheduling order, a party must demonstrate good cause and obtain the judge's consent. To meet the good cause standard, the party must show that, despite its diligence, it could not reasonably have met the scheduling order deadline. *Franklin v. Law Firm of Simon, Eddins & Greenstone, L.P.*, Civ. A. Nos. 3:10-CV-1581-D, 3:11-CV-0111-D, 2012 WL 2159219, at *2 (N.D. Tex. June 14, 2012) (internal citations and quotations omitted).

9. CCI's Motion fails to meet the good cause standard required by Rule 16(b)(4). As discussed above, Xerox produced the HPQC data that its expert relied upon over six months ago. Both CCI and its expert have received ample time to review and analyze the data and material that Xerox's expert relied upon. CCI's failure to review diligently the material that Xerox previously provided is simply not a basis for an extension.

10. CCI's attempt to link its request for an extension to its inability to access the native HPQC database must likewise fail. Because Xerox previously produced the HPQC export, it was under no obligation to produce the HPQC database in native form, nor did CCI request such access. Xerox's production of the native database was **on its own initiative, solely as an accommodation**. Furthermore, CCI already received a two week extension to the deadline to serve rebuttal expert reports to permit it time to access the HPQC database. Accordingly, any further extension is unwarranted – CCI's unwillingness to follow simple instructions and download a publicly available software program for *free* cannot form the basis for granting a second extension.

11. Finally, even though CCI failed to subpoena Mr. Sharma in a timely manner, Xerox recently withdrew its designation of Mr. Sharma as an unretained expert. Accordingly, there is no basis for requesting an extension to rebuttal expert reports or *Daubert* papers.

Because CCI's Motion fails to establish the good cause necessary for receiving a second extension to the deadline to serve rebuttal reports and file *Daubert* Motions, Xerox respectfully requests that the Court deny CCI's Motion and require CCI to issue immediately its rebuttal expert report.

Date:  May 19, 2014	Respectfully submitted,

	 */s/ Jennifer Klein Ayers*
	Steven G. Schortgen, Lead Counsel
	  Texas State Bar No. 00794603
	  steve.schortgen@klgates.com
	Craig W. Budner
	  Texas State Bar No.03313730
	  craig.budner@klgates.com
	Ann Marie Arcadi
	   Texas State Bar No. 00786994
	   annmarie.arcadi@klgates.com
	Jennifer Klein Ayers
	  Texas State Bar No. 24069322
	  jennifer.ayers@klgates.com
	Jack J. Stone
	   Texas State Bar No. 24083592
	   jack.stone@klgates.com

	K&L Gates LLP
	1717 Main St.
	Suite 2800
	Dallas, TX  75201
	214.939.5500
	214.939.5849 Facsimile


	**ATTORNEYS FOR AFFILIATED COMPUTER SERVICES, LLC, n/k/a XEROX BUSINESS SERVICES, LLC**


## CERTIFICATE OF SERVICE

	Pursuant to Local Rule 5.1(d), I certify that all counsel of record who have appeared in this case received a copy of this document via the Court's CM/ECF system on May 19, 2014.


	 */s/ Jennifer Klein Ayers*
	Jennifer Klein Ayers