**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CEDARCRESTONE, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | **Civil Action No. 3:12-cv-4673** |
| **v.** | § | |
| | § | |
| **AFFILIATED COMPUTER** | § | |
| **SERVICES, LLC n/k/a XEROX** | § | |
| **BUSINESS SERVICES, LLC** | § | |
| | § | |
| **Defendant.** | § | |

**CCI'S RESPONSE TO XEROX'S MOTION TO**
**STRIKE SUMMARY JUDGMENT EVIDENCE**

## I.      INTRODUCTION

In a curious twist – and one seemingly at odds with the Court's recent directive that Parties attempt to limit the heightened motion practice that has burdened this litigation – Xerox contends that virtually none of the evidence adduced by the Parties to date in this action will be admissible at trial.  Xerox's motion to strike cuts a wide swath, ranging from the testimony of its own employees (including those designated as 30(b)(6) corporate designees) to the very agreements upon which both Parties' contract claims are based.

Xerox's principal argument is that every single document cited in CCI's summary judgment motion is not authenticated, simply because CCI did not include a declaration from an attorney stating that the documents were, indeed, produced in this litigation.  Xerox is wrong.  Neither the Federal Rules of Civil Procedure nor the Northern District of Texas Local Rules require an attorney declaration to authenticate summary judgment evidence.  To the contrary, courts reviewing summary judgment motions routinely consider evidence of the type proffered

by CCI here.  Why Xerox has seen fit to burden the Court with this issue is, quite frankly, a mystery to CCI.

Xerox's other arguments fare no better.  Xerox attacks statements made in emails by Charlene Parsons of Cigna and by Deloitte in its November 4, 2011 Readiness Assessment as both inadmissible hearsay and lacking foundation.  Ms. Parsons was the Cigna Project Executive, charged with management and oversight of the entire project; the notion that she lacked personal knowledge as to any aspect of the Project is ludicrous.  So too with the Deloitte Readiness Assessment, which painstakingly details the extensive materials reviewed and Project personnel interviewed by Deloitte to make its assessment.  As to the hearsay objection, in neither case are the documents offered to prove the truth of the matter asserted, but rather to show how third parties (Cigna and Deloitte) viewed Xerox's performance on the Cigna Project.  Moreover, even if the documents were offered for their truth, both would plainly fall within the business-records and catchall hearsay exceptions, as both documents are consistent with the sworn testimony of Ms. Parsons and the two Deloitte witnesses who have been deposed in this matter.

Finally, Xerox's objection to purported "lay opinions" – the vast majority of which come from the deposition testimony of Xerox's own witnesses, including 30(b)(6) designees – are wholly misplaced.  The testimony Xerox seeks to strike is not opinion testimony, but rather the witnesses' first-hand account of critical facts relating to the Cigna Project.  And even if the testimony did constitute an opinion, the Federal Rules expressly permit opinions from lay witnesses as to non-scientific, non-technical issues.

At bottom, Xerox's objections are grounded on how damning the evidence is to Xerox's case, rather than on any legitimate basis for exclusion.  For these reasons, and those set forth more fully below, Xerox's motion to strike should be denied.

## II.     ARGUMENT

### A.     CCI's Summary Judgment Evidence is Properly Authenticated

Xerox's contention that the Court should strike the entirety of CCI's summary judgment evidence is based solely on the fact that CCI did not attach to its appendix an affidavit by counsel "authenticating" the summary judgment exhibits.  *See* Xerox's Mot. at 2-3.  As an initial matter, to the extent that Xerox implies that summary judgment exhibits must be accompanied by a separate affidavit testifying to their authenticity, Xerox is simply wrong.  The Federal Rules of Civil Procedure do not require such an affidavit to authenticate exhibits at summary judgment. *See* FED. R. CIV. P. 56(c)(1)(A) ("A party asserting that a fact cannot be . . . genuinely disputed must support the assertion by citing to particular parts of the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, **or** other materials") (emphasis added).  Similarly, the Northern District Local Rules provide for no such requirement, mandating only that summary judgment evidence, "including depositions, documents, electronically stored information, affidavits, declarations, stipulations, admissions, interrogatory answer, **or** other materials," (L.R. 56.6(a)) be included in an Appendix.

Moreover, Xerox's Motion wholly overlooks that virtually all of the summary judgment exhibits about which it now complains have been previously authenticated.  Indeed, CCI's summary judgment evidence falls into three authenticated categories:  (1) certified transcripts from sworn depositions taken in this action, (2) exhibits authenticated in such depositions, and/or (3) documents produced by Xerox during the course of discovery bearing Xerox's Bates stamp.

Federal Rule of Evidence 901(a) provides that "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to

support a finding that the matter in question is what its proponent claims." FED. R. EVID. 901(a). This rule does not limit the type of evidence that may be used to authenticate a document; indeed, a document "may be authenticated by circumstantial evidence, including its own distinctive characteristics." *Sanders v. Sevo Miller, Inc.*, No. 3-00-CV-1924-P, 2001 U.S. Dist. LEXIS 16686, at *5 (N.D. Tex. Oct. 12, 2001) (Kaplan, J.).

Under this standard, this Court has previously found that excerpts from deposition transcripts satisfy the low threshold of authenticity if the excerpts identify the name of the deponent, the date of the deposition, and the name of the reporter. *Id*. at 5‐6.; *see also Prineville Sawmill Co. v. Longview Fibre Co.*, No. 01-1073-BR, 2002 U.S. Dist. LEXIS 25548, at *31-32 (D. Or. Sept. 23, 2002) (denying Defendant's motion to strike deposition excerpt exhibits on the grounds that they are not properly authenticated where each exhibit included a cover page of the deposition identifying the deponent, the action, and the time and place of the deposition), *rev'd on other grounds*, No. 03-35214, 97 Fed. Appx. 133, 2004 U.S. App. LEXIS 9234 (9th Cir. May 11, 2004). Each transcript excerpt cited in CCI's Appendix [Dkt. 114] is preceded by the cover page reflecting this authenticating information. Notably, Xerox does not challenge the accuracy of the testimony or otherwise contend that the deposition transcripts are not "what its proponent claims." FED. R. EVID. 901(a). Therefore, the Court should find that this evidence is properly authenticated.

Similarly, the deposition exhibits[1] also meet the low threshold for authentication as these are documents that were attested to and authenticated by deposition witnesses and Xerox has not

---

[1] *See* Dkt. 114, Appendix in Support of Plaintiff/Counter-Defendant CedarCrestone, Inc.'s Motion for Partial Summary Judgment Under Fed. R. Civ. P. 56, at Appendix 000243-000312.

demonstrated (or even alleged) that these exhibits are inaccurate, misleading, or fraudulent.[2] *See Vought Aircraft Indus. v. Falvey Cargo Underwriting, Ltd.*, 729 F. Supp. 2d 814, 847 (N.D. Tex. 2010) (evidence is properly authenticated where it consists of deposition testimony or documents attested to by deposition witnesses); *see also DiCarlo v. Surety Life Ins. Co.*, 715 F. Supp. 974, 976 (D. Or. 1989) (four exhibits authenticated in depositions, three of which were originally produced by the objecting party, "have been properly authenticated for consideration in the motion for summary judgment"); *Shilling v. Crawford*, Case No. 2:05-CV-00889-PMP-GWF, 2007 U.S. Dist. LEXIS 70694 at *19-20 (D. Nev. Sept. 21, 2007) (stating that the Court will not disregard the deposition exhibits because Plaintiff "authenticated the exhibits during his deposition and has not demonstrated any of the exhibits are fraudulent, inaccurate, or inflammatory").

Further, the exhibits that bear Xerox's bates stamp were produced by Xerox during the course of discovery in this case and have therefore been implicitly authenticated.[3] *See In re Greenwood Air Crash*, 924 F. Supp. 1511, 1512 (N.D. Ind. 1995) ("Production of a document by a party constitutes an implicit authentication of that document."); *MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g Inc.*, No. 4:04-CV-445-Y, 2006 U.S. Dist. LEXIS 14142, at *5 (N.D. Tex. Mar. 14, 2006) (Means, J.) ("MGE does not dispute that it produced these bills during discovery; thus, its argument that the exhibit is not properly authenticated is meritless"); *South Cent. Bank v. Citicorp Credit Ser.*, 863 F. Supp. 635, 645 (N.D. Ill. 1994) (applying the principle that

---

[2] In fact, Xerox attached the Readiness Assessment to its Responsive brief. *See* APPX000379-APPX000403.

[3] *See* Dkt. 114, Appendix in Support of Plaintiff/Counter-Defendant CedarCrestone, Inc.'s Motion for Partial Summary Judgment Under Fed. R. Civ. P. 56, at Appendix 000243-000252, 000278-312, 000325-000326.

production of a document by a party constitutes an implicit authentication of that document in the summary judgment context).

The last exhibits that Xerox contends are not properly authenticated are the contracts that form the basis of this dispute[4], the report of Xerox's expert[5], and a letter authored by Xerox's Group President for HRO Outsourcing and Solutions, Rohail Kahn.[6]  Xerox's challenge to the contract documents – which are referenced by name in both the operative Complaint [Dkt 4, ¶ 7] and Counterclaim [Dkt. 40, ¶¶ 6-7] – is puzzling, to say the least.  The documents have all been introduced as deposition exhibits, and each has been authenticated by several deponents.  They are even properly considered part of the pleadings.  *Kaplan v. City of Arlington*, 184 F. Supp. 2d 553, 556 (N.D. Tex. 2002) (the Court "may consider as part of the pleadings any documents referred to in the plaintiff's complaint that are central to the plaintiff's claims"), citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Additionally, Xerox attached copies of these documents to its Response.  Simply put, CCI is mystified by Xerox's assertion that these documents are somehow inadmissible.

Similarly bizarre is Xerox's objection to its own expert report, which was produced by Xerox pursuant to FRCP 26(a)(2).  The notion that such a document requires one of CCI's counsel to attest to its authenticity before it may be considered by the Court is simply wrong.  And finally, Xerox's challenge to a letter authored by its own executive – and which Xerox has had ample opportunity to contest through discovery – is similarly without merit.  Further, even if the court finds that any of CCI's summary judgment evidence does not meet the low burden of

---

[4] *See* Dkt. 114, Appendix in Support of Plaintiff/Counter-Defendant CedarCrestone, Inc.'s Motion for Partial Summary Judgment Under Fed. R. Civ. P. 56, at Appendix 000001-000139.

[5] *See id*. at Appendix 000313-000320.

[6] *See id*. at Appendix 000325-000326.

authentication, the "court, in its discretion, can consider documents lacking proper authentication in determining a motion for summary judgment." *Enguita v. Neoplan USA Corp.*, 390 F. Supp. 2d 616, 624 (S.D. Tex. 2005) (Tagle, J.).  For each of these reasons, Xerox's objection to the authenticity of CCI's exhibits should be overruled.[7]

> **B.     CCI's Motion Does Not Rely Upon Hearsay Evidence.**

Xerox next contends that CCI impermissibly relies upon hearsay evidence and asks the Court to strike that evidence.  Specifically, Xerox objects to two documents as constituting or containing inadmissible hearsay:  (1) an email from Charlene Parsons, dated January 4, 2012, regarding "URGENT – Cigna ACS Implementation," and (2) the Deloitte "Readiness Assessment" commissioned by Cigna which formed the basis of Xerox's unilateral decision to defer the go-live date. Neither of these documents are inadmissible hearsay and they should not be stricken as such.

The first contested document is an e-mail authored by Charlene Parsons.  This document was cited by CCI in its brief for the proposition that the "Portal – the 'competitive edge' product that Xerox specifically pitched to Cigna – was ultimately denoted by Ms. Parsons as a 'failed product.'"  The statement "failed product" contained in this document, however, is not hearsay, because CCI is not offering it for its truth.  The purpose of this e-mail is simply to show Cigna's view towards Xerox's performance with the Portal.  Whether the Portal actually was a "failed product" is not the purpose behind CCI's submission of this document; this document is therefore not hearsay and should not be stricken.

---

[7] In the unlikely event that the Court deems Xerox's authentication objection to have merit, it should exercise its discretion to permit CCI to submit the attorney declaration demanded by Xerox rather than impose the draconian sanction of striking all of CCI's evidence.  *See Setterlund v. Potter*, 597 F. Supp. 2d 167, 173 (D. Mass. 2008).

The second document Xerox contends should be stricken as impermissible hearsay is a "Readiness Assessment" prepared by Deloitte at Cigna's request.  In the report, Deloitte identified a number of root causes that largely mirrored Ms. Parsons's criticisms of Xerox's performance.  Like Ms. Parsons's email, this document does not constitute inadmissible hearsay, because it is not being offered for its truth.  Instead, this document is being offered to show that an independent company made conclusions similar to those made by Cigna regarding Xerox's performance, not that the conclusions or criticisms contained in the Assessment are necessarily true.

Even if the Court finds that Ms. Parsons's statements as to the Portal and the Deloitte Readiness Assessment constitute hearsay, these documents meet both the business-records exception and the catch-all residual exception under Federal Rules of Evidence 803(6) and 807 and should not be stricken.  *See* FED. R. EVID. 803(b)[8]; *United States v. El-Mezain*, 664 F.3d 467, 497 (5th Cir. 2011) (stating that Fed. R. Evid. 807's "residual hearsay exception allows the admission of hearsay statements that are not covered by another exception if the statements have equivalent circumstantial guarantees of trustworthiness and the district court determines that they

---

[8] Fed. R. of Evid. 803(6) provides:

The following are not excluded by the rule against hearsay . . .

Records of a Regularly Conducted Activity.  A record of an act, event, condition, opinion, or diagnosis if:

(A) the record was made at or near the time by-or from information transmitted by-someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of the information nor the method or circumstances of preparation indicate a lack of trustworthiness.

are material, probative, and in the interests of justice"). Ms. Parsons email was sent to various Xerox executives, including Ms. Vezina, and thereafter forwarded with extensive commentary by and among numerous other Xerox executives; it is therefore a business record of Xerox. Furthermore, Ms. Sabatiel, Xerox's account executive for the Cigna Project, testified that she received and reviewed the Deloitte Readiness Assessment on the date it was issued, thereby qualifying the documents as Xerox's business record.[9]

Finally, there is no indication of untrustworthiness or concern that Ms. Parsons and Deloitte did not actually make the atrributed statements, therefore qualifying them under the catchall hearsay exception. As to Ms. Parsons statement that the Portal was a "failed product," she testified in her deposition at length regarding the problems Cigna experienced with the Portal, both before the delayed go-live and even continuing up to today.[10] Xerox cross-examined Ms. Parsons for nearly three hours, and thus had ample opportunity to challenge her on her views of the Portal. It simply chose not to do so.

As to the Readiness Assessment, Xerox's own witnesses have attested to its accuracy. *See*, *e.g.*, Deposition of Mark Squiers, at 232:21-237:13(testifying that the Deloitte report was accurate as a factual matter).[11] Further, two Deloitte witnesses were also deposed in this litigation, and Xerox (despite cross-examining the two witnesses for a total of some five hours) did not challenge or question the veracity of the report findings during those depositions. In fact, to the contrary, Xerox embraced the veracity of the Readiness Assessment findings to the extent

---

[9] A copy of excerpts of the transcript of deposition of Nancy Sabatiel, dated January 16, 2014, is attached to the Appendix submitted in support of this Response as **Exhibit 1**.

[10] A copy of excerpts of the transcript of deposition of Charlene Parsons, dated April 9, 2014, is attached to the Appendix submitted in support of this Response as **Exhibit 2**.

[11] A copy of excerpts of the transcript of deposition of Mark Squiers, dated February 5, 2014, is attached to the Appendix submitted in support of this Response as **Exhibit 3**

they were against CCI.[12]   And, Xerox attached this same report to its Responsive brief.  *See* APPX000379-APPX000403.   Given its own reliance on the document, Xerox cannot now dispute the trustworthiness of this document and move to strike it as inadmissible hearsay.

### C.   CCI's Evidence is Based on Personal Knowledge And/or The Requisite Foundation Has Been Established.

Xerox next objects to evidence that it claims "constitutes or includes statements for which the declarant lacks personal knowledge and/or statements for which CCI has not adduced evidence that establishes the declarant's foundation for the statements."  *See* Xerox's Mot. at 3-5. Specifically, Xerox objects to five documents that it claims the declarant either lacked personal knowledge of or that the proper foundation for that personal knowledge has not been established: two excerpts of Charlene Parsons's deposition testimony, an email authored by Ms. Parsons regarding "PeopleSoft 10.14 Migration," an email authored by Ms. Parsons regarding "URGENT – Cigna ACS Implementation," and the Deloitte "Readiness Assessment."   The statements contained in each of these documents have been made by declarants who have personal knowledge and should not be stricken.

Xerox challenges two excerpts from Ms. Parsons's deposition testimony.  Ms. Parsons was the Vice President of Talent Optimization for Cigna and the project executive for the Cigna Project.  She was significantly involved with oversight of the Cigna project and was in a position to make personal observations about the many issues that arose during the project.  To suggest that Ms. Parsons lacked personal knowledge regarding this project is illogical.  In these contested excerpts, Ms. Parsons testifies about all of the problems that CIGNA noted with Xerox throughout the duration of the project.  Similarly, Ms. Parsons also testified about the contract

---

[12] A copy of excerpts of the transcript of deposition of Annalie Radburn, dated May 13, 2014, is attached to the Appendix submitted in support of this Response as **Exhibit 4**.

price and merely instructed where the contract price for the contract between CIGNA and Xerox can be found.  Ms. Parsons was also the overall HRBPO project manager at Cigna and was instrumental in the decision to select Xerox.  She was significantly involved with that project and had oversight on that project and therefore has personal knowledge about these issues.  This testimony should not be stricken for lack of personal knowledge.

Xerox also challenges an email authored by Ms. Parsons regarding "PeopleSoft 10.14 Migration."  This email addresses Ms. Parsons's concerns with Xerox's performance and timing for deliverables.  Again, her concern was based on her own recognition and experience with Xerox on the Cigna project.  To suggest that she lacks the requisite personal knowledge to offer facts and observations about the critical issues with the project is disingenuous.  This email should not be stricken for lack of personal knowledge or foundation.

Next, Xerox challenges an email authored by Ms. Parsons regarding "URGENT – Cigna ACS Implementation."  That email begins with Ms. Parsons's statement that "Today I had the opportunity to meet Kathy Matsko," later discusses a PMO meeting, and also references statements made by the recipient of the email to Ms. Parsons.  Thus, the text of the email itself demonstrates Ms. Parsons' knowledge of the subject matter discussed therein. Ms. Parsons has testified at length about root cause analysis and this document merely reflects that analysis of the issues that arose with the Cigna project, based on her observations of the project learned through her role as project executive.

Finally, Xerox challenges the Readiness Assessment for lack of personal knowledge or proper foundation.   This objection is puzzling at best.  The entire basis of this Deloitte report is based on the analysis of information provided to Deloitte.  The Executive Summary on page 2 of the report explains that "Cigna engaged Deloitte to conduct an independent assessment on the

HR BPO transition performance; the primary objective is to validate the feasibility of the January 3, 2012 Go-Live based on the deferred scope." *See* Appendix p. 000254. That summary also explicitly provides that the "assessment is fact-based and encompasses perspectives from 25 key stakeholders from Cigna, ACS, CCI, and Deloitte (PMO)." *Id.* Further, the Appendix of the Assessment lays out in detail four pages of documents Deloitte reviewed and the stakeholder interview documentation and findings. *See* Appendix pp. 000265-000268, 000275-000276. This Readiness Assessment is therefore certainly based on Deloitte's personal knowledge gained from performing significant document review and witness interviews to acquire the necessary information to conduct the assessment and to support Deloitte's conclusions. To suggest that Deloitte lacks the requisite personal knowledge is nonsensical.

In sum, these documents all have the proper foundation and personal knowledge has been established. These exhibits should not be stricken and excluded from consideration by the Court in deciding CCI's Motion for Partial Summary Judgment.

### D.  CCI Does Not Rely Upon Improper Opinion Testimony of Lay Witnesses.

Finally, Xerox objects to evidence that it claims constitutes "improper opinion testimony of lay witnesses." *See* Xerox's Mot. at 5-6. Specifically, Xerox objects to excerpts of deposition testimony by five witnesses. Xerox contends that each of these excerpts "contains inadmissible lay opinions" and requests that each citation be stricken and the evidence not be considered in support of CCI's motion for partial summary judgment. *Id.*

While lay witnesses may not give an opinion that requires scientific, technical, or other specialized knowledge, lay opinions are appropriate from individuals who have particularized knowledge grounded in personal observation and experience. *See* FED. R. EVID. 701 (A lay witness's opinion is "limited to one that is: (a) rationally based on the witness's perception; (b)

helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (3) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702"); *United States v. El-Mezain*, 664 F.3d 467, 511 (stating that a "lay opinion must be based on personal perception, must be one that a normal person would form from those perceptions, and must be helpful to the jury"); *Lindquist v. Union Pac. R.R. Co.*, No. 9:07-CV-27-TH JURY, 2008 U.S. Dist. LEXIS 81464, at *4 (E.D. Tex. Oct. 7, 2008) (Heartfield, J.) ("Lay witnesses can testify in the form of opinions and 'the fact that the lay opinion testimony bears on the ultimate issue in the case does not render the testimony inadmissible'") (citation omitted).  None of the deposition excerpts that Xerox challenges constitutes inadmissible lay opinion based on scientific, technical, or other specialized knowledge.  Therefore, none of these excerpts are improper lay opinions and they should not be stricken.

The first contested excerpt is Charlene Parsons's deposition testimony.  As noted above, Ms. Parsons was the Vice President of Talent Optimization for Cigna and was the project executive for the Cigna project.   In that particular excerpt, Ms. Parsons was asked for her opinion of the Portal after it went live, but she did not offer her opinion.  Instead, the question was rephrased and Ms. Parsons merely confirmed that she believed there were significant problems with the Portal leading up to Go Live and explained what those problems were.  Ms. Parsons was the project manager for the Portal and had first-hand knowledge about the significant problems encountered with the Portal based on her involvement with the project. Because Ms. Parsons has particularized knowledge about the problems with the Portal and this testimony would be helpful to the fact finder, this testimony is not an impermissible lay opinion and should not be stricken.

Xerox also challenges several excerpts from Edward Francis Fenton, Jr.'s deposition

13

testimony.  Mr. Fenton is a Xerox employee and held the title of Chief Information Officer, enterprise business process outsourcing during the Cigna project.  Moreover, Mr. Fenton was Xerox's Rule 30(b)(6) corporate designee to testify as to the facts underlying Xerox's Counterclaims, including the allegation that CCI was "solely responsible" for "the PeopleSoft Component of the Cigna Project."  [Dkt. 40, ¶ 34.]  As such, Mr. Fenton either had particularized knowledge regarding Xerox's responsibilities as to the PeopleSoft Component of the Cigna Project, or was charged with obtaining that knowledge in order to prepare for his 30(b)(6) testimony.  Accordingly, Mr. Fenton's testimony on page 196 confirming Xerox's responsibility for certain aspects of the PeopleSoft Upgrade is not opinion testimony at all, but rather a corporate officer and 30(b)(6) designee's understanding of the facts underlying Xerox's counterclaim.  Even if the Court concludes that this testimony constitutes an opinion, it is a permissible lay opinion based on Mr. Fenton's position and personal knowledge as CIO on the Cigna project.  This testimony is not based on scientific knowledge or expertise requiring qualification as an expert witness.

Similarly, Mr. Fenton's testimony on pages 165 and 232-238 is not improper lay opinion. The testimony on page 165 discusses facts or evidence within Mr. Fenton's knowledge as the 30(b)(6) witness of facts supporting Xerox's fraud claim.  *See, e.g.*, Appendix p. 000154 ("Q: Other than what you've already testified to, are you aware of any other facts or evidence that support that allegation?  A:  No").  And his testimony on pages 232-238 discuss facts about Xerox's purported damages, another topic on which Mr. Fenton was the designated 30(b)(6) witness.  In that capacity, Mr. Fenton's testimony as to Xerox's voluntary decision to waive its limitation of liability on the Cigna/Xerox contract – which led to a $16.5 million payment to Cigna which makes up the majority of Xerox's claimed damages against CCI – is not opinion

14

testimony at all, but rather factual testimony of which Mr. Fenton, as the designated 30(b)(6), was required to have knowledge.

Xerox also challenges an excerpt from Mark Squiers's deposition testimony as improper lay opinion evidence.  During the Cigna project, Mr. Squiers was Xerox's Executive Managing Director and is signatory to various contract documents.  Mr. Squiers has also been involved in a number of projects where Xerox was subcontracting work related to PeopleSoft to other entities and thus has general knowledge about the limitations on liability in these types of contracts.  The contested testimony relates to Mr. Squiers's personal knowledge about whether claims have been made to Xerox by third parties relating to the Cigna project.[13]  In other words, the testimony relates to facts, limited to those within Mr. Squiers's personal knowledge, about whether these claims have or have not been made.  No opinion was elicited in the challenged testimony, and

---

[13] *See* Dkt. 114 at 000231:

> "***Do you know*** if there has been any claim made to ACS by any third party related to personal injuries or death or damages to or loss of tangible -- tangible property relating to the Cigna project?
>
> . . .
>
> ***Do you know*** if there's been any claims made by any third parties against ACS relating to intellectual property infringement relating to the Cigna project?
>
> . . .
>
> ***Do you know*** if there's been any claims made by any third parties against ACS relating to employment claims made by CedarCrestone employees which were caused by CedarCrestone?
>
> . . .
>
> ***Are you aware*** of any third parties that have made any claims against ACS relating to the breach by CedarCrestone, its agents, or employees of the confidentiality and data security provisions of the MSA?
>
> . . .
>
> And ***do you know*** if there's been any claims made against ACS by third parties relating to the willful misconduct or gross negligence of CedarCrestone, its agents, or employees?"

(emphasis added).

none was offered.  This testimony should not be stricken as improper lay opinion evidence.

The next contested excerpts are from Ms. Vezina's deposition testimony, another Xerox executive and a Xerox corporate officer who had oversight responsibility for the Cigna Project. Xerox first contends that Ms. Vezina offers improper lay opinion testimony regarding the contract amendments by which Xerox waived its limitation of liability vis-a-vis Cigna. Specifically, the elicited testimony relates to the reason or purpose behind Amendment 4 to the Cigna-Xerox contract and the decision regarding whether the limitation of liability should be removed from the original Cigna contract.  In other words, this testimony relates to facts underlying that Amendment, not lay opinion.  The second challenged excerpt related to Ms. Vezina's understanding as to whether the modification of the limitation of liability provision changed the parameters of the contract between Xerox and Cigna and whether CCI should be held responsible for this modification.  Even if this testimony goes to the ultimate issue for the jury to decide, it is grounded in Ms. Vezina's personal observation and is not based on scientific, technical, or specialized knowledge; this testimony is not inadmissible. [14]  *See Lindquist v. Union Pac. R.R. Co.*, No. 9:07-CV-27-TH JURY, 2008 U.S. Dist. LEXIS 81464, at *4 (E.D. Tex. Oct. 7, 2008).

The final contested excerpt is Mark McGloughlin's deposition testimony.  Mr. McGloughlin was both Xerox's IT Lead and its Transition Executive for the Cigna Project; he was also Xerox's designated 30(b)(6) witness on Xerox's change of the Cigna project go-live

---

[14] Remarkably, in the face of CCI's Notice of Deposition for Xerox's CEO, Xerox has offered Ms. Vezina to testify as to Xerox's reasons for agreeing to waive its limitation of liability.  A copy of counsel of Xerox's June 9, 2014 is attached to the Appendix submitted in support of this Response as **Exhibit 5** (offering Ms. Vezina as "Xerox's Rule 30(b)(6) witness on the decision to pay CIGNA amounts in excess of the original limitation of liability amount in the Cigna contract").  In other words, Xerox has proffered Ms. Vezina to offer testimony on the very same topic on which, in this motion, it asserts Ms. Vezina cannot testify.

date, including specifically any involvement and/or consultation or lack thereof with CCI.[15]  The

challenged excerpt relates directly to this 30(b)(6) topic. The questions posed to Mr.

McGloughlin asked him to testify, based both on his personal knowledge and the knowledge he

was to have gained as a 30(b)(6) designee, regarding the following:  (1) whether anyone at CCI

formally agreed to the deferral of the go live date, (2) whether a change order was signed

between Xerox and CCI relating to the change of the go live date, (3) whether a change request

was ever discussed or negotiated between Xerox and CCI relating to the change in the go-live

date, (4) whether there was any contractual responsibility between the parties as to the changing

of critical transition milestones in the statement of work, and (5) whether it is Xerox's contention

that any obligation it had to obtain CCI's agreement on a change in the go live date was excused.

The questions specifically elicited factual testimony based on Mr. McGloughlin's personal

knowledge, as well as the corporate knowledge he was charged with obtaining,[16] and in no way

---

[15] A copy of a letter from Jack J. Stone to Tom Hanson, dated January 16, 2014, is attached to the Appendix submitted in support of this Response as **Exhibit 6**.

[16] *See* Dkt. 114 at 000178 (emphasis added):

> ***To your knowledge***, did anybody at CedarCrestone formally agree to the deferral of the go live date?
>
> . . .
>
> And ***to your knowledge***, was there ever a change order signed between Xerox and Cigna – or I'm sorry – Xerox and CCI relating to the change of the go live date?
>
> . . .
>
> ***Do you know*** if a change request was ever discussed or negotiated between Xerox and CCI relating to the change in the go live date?
>
> . . .
>
> ***Do you have any knowledge of*** whether  there was any contractual responsibility between the parties as to the changing of critical transition milestones in the statement of work.
>
> . . .
>
> ***[D]o you know*** if it is Xerox's contention that any obligation it had to obtain CedarCrestone's agreement on a change in the go live date was excused?

constitute opinion testimony, permissible or otherwise.

## III.   CONCLUSION

For the foregoing reasons, CCI respectfully requests that the Court deny Xerox's Motion to Strike Evidence Cited in Support of CedarCrestone, Inc.'s Motion for Partial Summary Judgment.

Date:  June 13, 2014                                      Respectfully submitted,

                                                         DYKEMA GOSSETT PLLC

                                                         By: /s/ Thomas M. Hanson
                                                         Brian A. Colao
                                                         State Bar No.  00793528
                                                         Thomas M. Hanson
                                                         State Bar No. 24068703
                                                         Christine A. Nowak
                                                         State Bar No. 24050200
                                                         1717 Main Street, Suite 4000
                                                         Dallas, Texas 75201
                                                         214.462.6420

                                                         **ATTORNEYS FOR CEDARCRESTONE, INC.**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that, on the 13th day of June, 2014, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel of record electronically as authorized by Federal Rule of Civil Procedure 5(b)(2)-(3).

*/s/      Thomas M. Hanson*

19