IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CEDARCRESTONE, INC., | § |
| | § |
| Plaintiff/Counter-Defendant, | § |
| | § |
| v. | § Civil Action No. 3:12-cv-4673 |
| | § |
| AFFILIATED COMPUTER | § |
| SERVICES, LLC n/k/a XEROX | § |
| BUSINESS SERVICES, LLC | § |
| | § |
| Defendant/Counter-Plaintiff. | § |

## SECOND AMENDED COMPLAINT

Plaintiff/Counter-Defendant CedarCrestone, Inc. ("CedarCrestone"), complains of Defendant/Counter-Plaintiff Affiliated Computer Services, LLC n/k/a Xerox Business Services, LLC ("Xerox"), and states as follows:

### NATURE OF THE ACTION

1.      This is a suit brought by CedarCrestone against Xerox to recover moneys due and owing under written contracts, and damages caused by Xerox's tortious conduct as alleged herein.  CedarCrestone provides technical and consulting services for Oracle "PeopleSoft" software systems. Xerox commissioned CedarCrestone to complete a PeopleSoft upgrade of a system owned by CIGNA. Xerox fell behind on paying CedarCrestone for its work, and subsequently induced CedarCrestone to continue its performance notwithstanding Xerox's intent to never compensate CedarCrestone for its performance.  Ultimately, Xerox repudiated the contracts in their entirety, thereby breaching them and damaging CedarCrestone in at least the amount of $1,789,246.92.  CedarCrestone seeks judgment for its actual damages and attorney fees.

**CEDARCRESTONE'S SECOND AMENDED COMPLAINT -- Page 1 of 9**

## PARTIES

2. Plaintiff, CedarCrestone, Inc. ("CedarCrestone") is a Delaware corporation with its principal place of business in Georgia. For purposes of federal jurisdiction it is a citizen of the States of Delaware and Georgia.

3. Defendant Affiliated Computer Services, LLC n/k/a Xerox Business Services, LLC ("Xerox") is the successor by merger, LLC-conversion, and name change from the Affiliated Computer Services entity that entered into the contracts at issue, and, as such, is the party responsible for performance and payment thereunder. On information and belief, as represented by Xerox, Affiliated Computer Services is now a limited liability corporation known as Xerox Business Services, LLC, whose sole member is Xerox Corporation, a New York Corporation with its principal place of business in Connecticut. For purposes of federal jurisdiction, Xerox is a therefore a citizen of New York and Connecticut.

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over the parties. Each consented to personal jurisdiction in the federal or state courts of Dallas County, Texas in the contracts made basis of this lawsuit, and purposefully availed themselves of this jurisdiction by entering into contracts in Texas under which all contractual obligations were performed in this state.

5. This Court has subject matter jurisdiction over this action under 28 U.S.C.A. §1332(a) because (1) there is complete diversity of citizenship between Plaintiff and Defendant, and (2) the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. Venue is proper in this district under 28 U.S.C. § 1441(a) because the state court where the State Court Action has been pending is located in this District.

**CEDARCRESTONE'S SECOND AMENDED COMPLAINT -- Page 2 of 9**

## FACTUAL ALLEGATIONS

7.  Xerox entered into two contracts with CedarCrestone, a Master Services Agreement (MSA) dated as of August 1, 2011, and an Upgrade Statement of Work (SOW) with an original effective date of September 1, 2010 and later amended with an effective date of August 1, 2011 (collectively "the contracts").

8.  Under the contracts, Xerox agreed to pay CedarCrestone for services in connection with upgrading a computer system for CIGNA, in particular CIGNA's PeopleSoft Human Capital Management system, from HCM version 8.9 to 9.1.

9.  CedarCrestone performed, substantially performed, and/or tendered performance of its obligations under the contracts up until the point that Xerox breached and repudiated the contracts.

10. Any defects or delays in CedarCrestone's performance, if any, were de minimus or were excused under Section 5.2.5(b) of the SOW, which provides in pertinent part that CedarCrestone's nonperformance of any obligations under the SOW shall be excused to the extent that they were due to the acts or omissions of Xerox or CIGNA or third parties acting on their behalf. In the alternative, any defects or delays in CedarCrestone's performance, if any, were excused by Xerox's prior material breach.

11. Xerox failed to timely pay CedarCrestone amounts due under the contracts. Such failure constitutes a breach of contract.

12. CedarCrestone tried in good faith to work with Xerox to identify and resolve any problems. Xerox responded in bad faith by stalling and making false and improper complaints and excuses.

13. Xerox's true intentions and plans were to get CedarCrestone to continue

providing services as long as possible but with no intention of ever paying for them. Specifically, Xerox induced CedarCrestone to continue performing under the parties' contract for a period of more than two months, notwithstanding that Xerox had already decided that (1) it was terminating CedarCrestone and would be replacing CedarCrestone with another subcontractor; and (2) it would not only not pay any of CedarCrestone's invoices for work already performed, but it had no intention of paying CedarCrestone for the work it was continuing to perform under the parties' contract.

14. The impact of the combination of these decisions was that (according to Xerox) CedarCrestone would never be entitled to payment for the services performed on the project, because (1) CedarCrestone would not be paid until it completed its work and (2) CedarCrestone's completion of its work would be impossible because CedarCrestone's work was being completed by another subcontractor. In other words, as soon as the two decisions – that CedarCrestone would not be paid until all development work was completed, and that another entity would be brought in to complete the development work – were made, it was impossible (according to Xerox's theory of the case) for CedarCrestone to ever complete the performance necessary for payment to resume.

15. Xerox did not inform CedarCrestone of these decisions, but instead deliberately kept its decisions from CedarCrestone in order to induce CedarCrestone to continue to perform on the project. While internally Xerox employees such as Nancy Sabatiel were discussing how Xerox should "whip on" CedarCrestone to keep working because "they are pretty much free right now," externally Xerox personnel such as Mark Squiers had told CedarCrestone to "keep going." Xerox's reason for failing to disclose its intention to never pay CedarCrestone, while at the same time instructing CedarCrestone to continue performing, was simple: Xerox knew that

CedarCrestone might walk off the project if it knew it was never going to be paid, and Xerox wanted to keep CedarCrestone working for free as long as possible. Relying on Xerox's instructions to continue working, and deliberately kept in the dark about the decisions Xerox had made which guaranteed that CedarCrestone would never receive payment for its ongoing efforts, CedarCrestone continued to perform.

16. In fact, it was not until January 18, 2012, that Xerox finally informed CedarCrestone of its position with regard to the payment of CedarCrestone's invoices and replacement by Summit. At that time, not surprisingly, CedarCrestone informed Xerox that it was terminting the parties' agreement and would cease its work on the project on February 2, 2012.

17. In sum, from November 23, 2011 (at the latest) to January 18, 2012, Xerox induced CedarCrestone to continue to perform under the parties' contract despite knowing that CedarCrestone would never be paid for its work.

18. On or about January 18, 2012, Xerox repudiated the contracts in their entirety by finally admitting to CedarCrestone that Xerox would not pay CedarCrestone either the outstanding amounts due under the contract or any additional amounts, but expected CedarCrestone to continue to provide services.

19. Such repudiation excused CedarCrestone from any further performance under the contracts and entitles it to recover the full amounts due to it under the contracts in the principal amount of $1,789,246.92 plus interest and attorney's fees.

20. Notwithstanding Xerox's repudiation, CedarCrestone gave notice of Xerox's breach of the contracts and an opportunity to cure the breach as contemplated in the contracts.

21. Xerox failed and refused to pay the outstanding balance due or otherwise cure its

breach. CedarCrestone thereafter gave formal notice of termination of the contracts, also as contemplated in the contracts.

22. Based on such nonpayment, CedarCrestone contends that it had a legal right to terminate the contract under the contract because the nonpayment was a material breach of the contract by Xerox.

## FIRST CAUSE OF ACTION

### (Breach of Written Contracts)

23. CedarCrestone incorporates by reference all prior allegations as though fully set forth herein.

24. The contracts are valid and enforceable written contracts.

25. CedarCrestone performed, substantially performed, and/or tendered performance in accordance with the terms of the contracts.

26. Xerox breached the contracts by refusing to pay CedarCrestone amounts due under the contracts and by later repudiating the contracts in their entirety.

27. CedarCrestone was damaged as a result of Xerox's breaches of contract.

28. CedarCrestone is therefore entitled to and seeks judgment against Xerox for actual damages for breach of contract in the principal amount of in the principal amount of $1,789,246.92, plus pre and post judgment interest as allowed by law.

## SECOND CAUSE OF ACTION

### (Fraud)

29. CedarCrestone incorporates by reference all prior allegations as though fully set forth herein.

30. Xerox made material false representations and omissions regarding Xerox's

intention to perform under the contracts.

31. Xerox's material false representations and/or omissions alleged herein were made recklessly or knowling, with the intent that CedarCrestone rely on them by continuing to perform under the parties' contracts when Xerox had no intention of further performance.

32. CedarCrestone relied on Xerox's representations and omissions by continuing to perform, which caused injury to CedarCrestone. Had Xerox revealed its true intentions, rather than fraudulently instructing CedarCrestone to continue its performance, CedarCrestone would have ceased its performance and invoked its contractual remedies rather than continuing to performance and incurring damages in conjunction therewith.

## THIRD CAUSE OF ACTION

### (Negligent Misrepresentation)

33. CedarCrestone incorporates by reference all prior allegations as though fully set forth herein.

34. Xerox made material false representations and omissions regarding Xerox's intention to perform under the contracts, and supplied false information to CedarCrestone for CedarCrestone's guidance in its business.

35. Xerox did not exercise reasonable care or competence in making the misrepresentations and omissions complained of herein.

36. CedarCrestone relied on Xerox's representations and omissions by continuing to perform, which caused injury to CedarCrestone. Had Xerox exercised reasonable care in communicating its intentions to CedarCrestone, CedarCrestone would have ceased its performance and invoked its contractual remedies rather than continuing to performance and incurring damages in conjunction therewith.

## ATTORNEYS' FEES

37. Xerox's breaches have caused CedarCrestone to retain the undersigned attorneys to enforce the contracts and recover sums due to CedarCrestone. CedaraCrestone presented its claim to Xerox but payment for the just amount owed was not tendered within the expiration of the 30th day after the claim was presented. In accordance with Chapter 38 of the Texas Civil Practice & Remedies Code, CedarCrestone is therefore entitled to recover its reasonable attorney's fees and costs in addition to its actual damages.

## CONDITIONS PRECEDENT

38. All conditions precedent to CedarCrestone's rights under the contracts, including unsuccessful completion of all required Dispute Resolution procedures, have been performed, have occurred, or were excused.

## PRAYER

WHEREFORE, CedarCrestone prays that it have and recover judgment of and from Xerox for the following:

    a.    Actual damages against Xerox;

    b.    Reasonable attorney's fees, both through trial and in the event of an appeal;

    c.    Pre and post judgment interest on all sums in the maximum amounts allowed by law; and

    d.    For such other and further relief, specific or general, in law and in equity, to which CedarCrestone is justly entitled.

Dated: June 27, 2014                    Respectfully submitted,

**DYKEMA GOSSETT PLLC**

/s/ Thomas M. Hanson
Brian A. Colao SBN 00793528
Thomas M. Hanson SBN 24068703
Christine A. Nowak SBN 24050200
Attorneys for CedarCrestone, Inc.
1717 Main Street, Ste. 4000
Dallas, Texas 75201
214-462-6420
thanson@dykema.com

**ATTORNEYS FOR
CEDARCRESTONE, INC.**

## CERTIFICATE OF SERVICE

This is to certify that, on the 27th day of June, 2014, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel of record electronically as authorized by Federal Rule of Civil Procedure 5(b)(2)-(3).

                                        /s/      Thomas M. Hanson