**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **CEDARCRESTONE, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 3:12-cv-4673** |
| **v.** | § | |
| | § | |
| **AFFILIATED COMPUTER** | § | |
| **SERVICES, LLC, n/k/a XEROX** | § | |
| **BUSINESS SERVICES, LLC** | § | **JURY TRIAL REQUESTED** |
| | § | |
| **Defendant.** | § | |

**DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES AND COUNTERCLAIM**

Defendant Xerox Business Services, LLC, formerly known as Affiliated Computer Services, LLC ("Defendant" or "XBS"), answers the Second Amended Complaint ("Second Amended Complaint") of Plaintiff CedarCrestone, Inc. ("Plaintiff" or "CCI") as follows:

**NATURE OF THE ACTION**

1.      XBS admits that CCI has brought suit against it for breach of contract and XBS's alleged "tortious conduct," but XBS denies any wrongdoing and denies that CCI is entitled to recover any damages in this litigation. XBS admits that CCI purports to provide technical and consulting services for Oracle "PeopleSoft" software systems. Subject to its affirmative defenses and counterclaims, XBS admits that it entered into an agreement with CCI, whereby CCI was to complete a PeopleSoft upgrade of a system owned by Cigna, but XBS denies that CCI completed the work it was contractually obligated to perform. XBS denies that it fell behind on paying CCI on any work and further denies that XBS repudiated the contracts with CCI. XBS also denies that it "induced" CCI to continue its performance under the contract, and further denies that it never intended to compensate CCI for its performance. XBS further denies

that it breached its agreement with CCI and denies that CCI has been damaged in at least the amount of $1,789,246.92.  XBS admits that CCI is seeking judgment for its actual damages and attorneys' fees, but XBS denies that CCI is entitled to either.  XBS denies all remaining allegations contained in Paragraph 1 of the Second Amended Complaint.

**P**ARTIES

2.      XBS is without knowledge or information sufficient for form a belief as to the truth of the statements contained in Paragraph 2 of the Second Amended Complaint, and on that basis denies them.

3.      XBS admits that it is a successor to Affiliated Computer Systems, Inc., the entity which entered into the written contracts at issue in this lawsuit with CCI.  XBS further admits that it changed its name from Affiliated Computer Services, LLC, to Xerox Business Services, LLC.  Defendant admits it is a Delaware limited liability company and that its sole member is Xerox Corporation.  Defendant further admits that Xerox Corporation is and has been a corporation organized under the laws of the State of New York with its principal place of business in Connecticut.  Defendant further admits that for purposes of diversity jurisdiction, XBS is a citizen of New York and Connecticut.  XBS denies all remaining allegations contained in Paragraph 3 of the Second Amended Complaint.

**J**URISDICTION AND **V**ENUE

4.      XBS admits that this Court has personal jurisdiction over the parties.  Subject to its affirmative defenses and counterclaims, XBS further admits that the parties to this suit consented to personal jurisdiction in the federal or state courts of Dallas County, Texas in the contracts made the basis of this lawsuit and purposefully availed themselves of this jurisdiction by entering into contracts in Texas.  XBS denies that all contractual obligations were performed

by Plaintiff and further denies that such obligations were entirely performed in this state.

5.      XBS admits that this Court has subject matter jurisdiction pursuant to Defendant's proper removal of this action.

6.      XBS admits that venue is proper in this district under 28 U.S.C. § 1441(a) because the state court where the State Court Action was pending is located in this District.

## FACTUAL ALLEGATIONS

7.      Subject to its affirmative defenses and counterclaims, XBS  admits the contents of paragraph 7.

8.      Subject to its affirmative defenses and counterclaims, XBS admits that it agreed to pay CCI if CCI performed its contractual obligations as set forth in the August 1, 2011, Master Services Agreement, the September 1, 2010, Statement of Work and the August 1, 2011, Amendment to the Statement of Work ("Contracts"). XBS denies all remaining allegations contained in Paragraph 8 of the Second Amended Complaint.

9.      XBS denies the allegations contained in Paragraph 9 of the Second Amended Complaint.

10.     XBS denies the allegations contained in Paragraph 10 of the Second Amended Complaint.

11.     XBS denies the allegations contained in Paragraph 11 of the Second Amended Complaint.

12.     XBS denies the allegations contained in Paragraph 12 of the Second Amended Complaint.

13.     XBS denies the allegations contained in Paragraph 13 of the Second Amended Complaint.

14.     XBS denies the allegations contained in Paragraph 14 of the Second Amended Complaint.

15.     XBS denies the allegations contained in Paragraph 15 of the Second Amended Complaint.

16.     XBS admits that CCI sent a letter to XBS dated January 19, 2012, purporting to give "ten days notice of termination for cause of all ACS-Cigna related Statements of Work" and demanding payment of $749,366.00 by XBS within ten days. XBS denies all remaining allegations in Paragraph 16 of the Second. Amended Complaint.

17.     XBS denies the allegations contained in Paragraph 17 of the Second Amended Complaint.

18.     XBS denies the allegations contained in Paragraph 18 of the Second Amended Complaint.

19.     XBS denies the allegations contained in Paragraph 19 of the Second Amended Complaint.

20.     XBS admits that CCI sent a letter to XBS dated January 19, 2012, purporting to give "ten days notice of termination for cause of all ACS-Cigna related Statements of Work" and demanding payment of $749,366.00 by XBS within ten days. XBS denies all remaining allegations in Paragraph 20 of the Second Amended Complaint.

21.     XBS admits that CCI sent a letter to XBS dated January 19, 2012, purporting to give "ten days notice of termination for cause of all ACS-Cigna related Statements of Work" and demanding payment of $749,366.00 by XBS within ten days.  XBS further admits that it properly withheld partial payment pursuant to the terms of the contracts for CCI's failure to perform its contractual obligations.  XBS denies all remaining allegations in Paragraph 21 of the

Second Amended Complaint.

22. XBS denies the allegations in Paragraph 22 of the Second Amended Complaint.

## FIRST CAUSE OF ACTION

23. XBS incorporates by reference all prior responses to CCI's Second Amended Complaint as though fully set forth herein.

24. Subject to its affirmative defenses and counterclaims, XBS admits that the Contracts are valid and enforceable written contracts.

25. XBS denies the allegations contained in Paragraph 25 of the Second Amended Complaint.

26. XBS denies the allegations contained in Paragraph 26 of the Second Amended Complaint.

27. XBS denies the allegations contained in Paragraph 27 of the Second Amended Complaint.

28. XBS denies the allegations contained in Paragraph 28 of the Second Amended Complaint.

## SECOND CAUSE OF ACTION

29. XBS incorporates by reference all prior responses to CCI's Second Amended Complaint as though fully set forth herein.

30. XBS denies the allegations contained in Paragraph 30 of the Second Amended Complaint.

31. XBS denies the allegations contained in Paragraph 31 of the Second Amended Complaint.

32. XBS denies the allegations contained in Paragraph 32 of the Second Amended

Complaint.

### THIRD CAUSE OF ACTION

33.     XBS incorporates by reference all prior responses to CCI's Second Amended Complaint as though fully set forth herein.

34.     XBS denies the allegations contained in Paragraph 34 of the Second Amended Complaint.

35.     XBS denies the allegations contained in Paragraph 35 of the Second Amended Complaint.

36.     XBS denies the allegations contained in Paragraph 36 of the Second Amended Complaint.

### ATTORNEY'S FEES

37.     XBS denies the allegations contained in Paragraph 37 of the Second Amended Complaint.

### CONDITIONS PRECEDENT

38.     XBS denies the allegations contained in Paragraph 38 of the Amended Complaint.

### PRAYER OF PLAINTIFF

39.     XBS denies the allegations contained in the Prayer of the Plaintiff and denies that Plaintiff is entitled to any of the relief requested.

### DEFENDANT'S AFFIRMATIVE DEFENSES

40.     By way of further defenses, XBS asserts the following, which apply to each and every claim asserted in the Second Amended Complaint unless otherwise stated.  By virtue of alleging these further defenses, XBS does not assume any burden of proof, persuasion, or

production not otherwise legally assigned to it.

41.     CCI's claims for relief are barred, in whole or in part, due to CCI's own fraudulent and negligent misrepresentations.  As set forth below in Paragraphs 50–102, CCI separately made multiple misrepresentations and omissions regarding its resources, and the quality and status of its work.  These misrepresentations prevented XBS from assessing CCI's work and avoiding or mitigating damages caused by CCI's wrongful conduct.  Absent CCI's misrepresentations, XBS could have made contingency plans to address CCI's failings.  As a result of CCI's deception, XBS missed the opportunity to make such contingency plans, resulting in significant losses, costs, and penalties.

42.     CCI's claims for relief are barred, in whole or in part, by the express terms and limitations of the Contracts, which permit XBS to terminate CCI in the event CCI materially breaches the Contracts.

43.     CCI's claims for relief are barred, in whole or in part, because CCI committed the first material breach of the Contracts.  CCI had significant and numerous unambiguous obligations under the Contracts with XBS.  CCI materially breached the Contracts with XBS by (a) failing to sufficiently perform all of its duties under the contract, including delivering code materially free of defects, (b) failing to follow all contractual provisions, (c) failing to meet critical transition milestones, (d) causing the Go Live date to be missed, and (e) abandoning the project altogether, resulting in significant damages to XBS.  CCI's commission of the first material breach discharged XBS's obligations under the common law as well as the Contracts.

44.     CCI's claims for relief are barred, in whole or in part, due to its failure to satisfy all conditions precedent.  As set forth below in Paragraphs 50–102, CCI had significant and numerous unambiguous obligations under the Contracts with XBS.  CCI breached the Contracts

with XBS by (a) failing to sufficiently perform all of its duties under the contract, including delivering code materially free of defects, (b) failing to follow all contractual provisions, (c) failing to meet critical transition milestones, (d) causing the Go Live date to be missed, and (e) abandoning the project altogether, resulting in significant damages to XBS.  All of these obligations constitute conditions precedent or, alternatively, material contractual duties that CCI breached.

45.     CCI's claims for relief are barred, in whole or in part, because XBS's performance was excused due to CCI's failure to perform its obligations under the contracts, including, (a) failing to sufficiently perform all of its duties under the contract, including delivering code materially free of defects, (b) failing to follow all contractual provisions, (c) failing to meet critical transition milestones, (d) causing the Go Live date to be missed, and (e) abandoning the project altogether, resulting in significant damages to XBS.

46.     CCI's claims for relief are barred, in whole or in part, because CCI wrongfully repudiated the contracts when, without just cause or excuse, it abandoned the Cigna project and discontinued its performance under the Contracts.

47.     CCI's claims for relief are barred, in whole or in part, due to its failure to mitigate its damages.

48.     XBS is not liable to CCI for the amount of damages claimed because XBS is entitled to an offset and credit, including, but not limited to the amounts it has sought in this litigation.

49.     XBS is not liable to CCI because CCI's own acts or omissions proximately caused or contributed to CCI's alleged injuries.

## DEFENDANT'S COUNTERCLAIMS

50.     Defendant XBS files its Counterclaims against Plaintiff CedarCrestone, Inc. ("Plaintiff" or "CCI") as follows:

### NATURE OF ACTION

51.     This is an action to recover damages for breach of contract, fraud, and for declaratory relief.  XBS entered into a multi-million dollar agreement with CCI, whereby CCI agreed to upgrade a human resources software system used by XBS's customer CIGNA.  CCI was to complete the upgrade on schedule, including meeting several critical deadlines throughout the contract period and an ultimate System Go Live ("go live") date of January 3, 2012.  For completion of that project, XBS agreed to pay CCI a fixed price of $3,149,825.00.

52.     However, CCI failed to meet its critical deadlines for the software upgrade.  Compounding problems, as XBS began making contingency plans to get the software upgrade completed as quickly as possible, CCI failed to participate in crucial meetings and conference calls, pulled its employees off the project, and, eventually, stopped working on the project altogether.  After CCI's intentional abandonment of the project, it refused to assist the new firm hired by XBS with a transition or in its work to complete the project.

53.     Additionally, CCI repeatedly led XBS to believe that its tasks were progressing and deadlines would be met, including dates of development and unit testing on the software upgrade.  However, CCI knew such representations were false or, at the very least, made them with reckless disregard for the truth.  This hindered the project's progress and prevented XBS from taking proactive alternative measures to avoid project delays.

54.     Had CCI met its contractual obligations or been candid in its assessment of its progress, the project would have been completed and rolled out to CIGNA in January 2012.

CCI breached its obligations under the agreement by both failing to meet deadlines and to complete the software upgrade, along with its intentional and improper termination of the agreement.  As a result, the "go live" date was missed and XBS was damaged severely.  As more fully described below, XBS seeks a judgment against CCI for the damages caused by CCI's wrongful conduct.

**FACTUAL ALLEGATIONS**

A.      **XBS and CCI Enter Into the Master Services Agreement and Statement of Work for the CIGNA Project**

55.     XBS and CCI have a history of working together on projects for XBS's customers.  CCI represented itself to be, generally, an expert in software consulting, and, specifically, an expert in PeopleSoft software implementation and development.  On prior occasions, XBS hired CCI to provide software implementation services, including performing PeopleSoft upgrades, which were part of XBS's larger IT consulting projects.

   *1.  XBS and CCI formalize relationship*

56.     To memorialize the relationship, in July 2009 XBS and CCI entered into a Master Services Agreement ("2009 MSA").  This set forth the general provisions of the work that CCI would do for XBS.  As individual projects would arise, XBS and CCI would memorialize the specifics for such projects in individual statements of work, known as a "SOW."

57.     In 2010, CIGNA hired XBS for a human resources outsourcing project ("CIGNA Project").  On September 1, 2010, XBS and CCI entered into the Upgrade Statement of Work ("SOW") for CCI to serve as a subcontractor on the CIGNA Project.  The SOW detailed the specific role of CCI in the CIGNA Project—upgrading CIGNA's PeopleSoft environment from version 8.9 to 9.1, including its development, coding, testing and customizations.  The SOW included the deliverables and specific deadlines for CCI's role in the CIGNA Project, including

a "go live" date of January 3, 2012.

58.     In August 2011, ACS and CCI entered into a second and subsequent Master Services Agreement ("MSA").   Accordingly, ACS and CCI executed Amendment 1 to Statement of Work ("SOW Amendment") on the same day amending the SOW, which simply linked the SOW to the MSA.[1] The MSA, SOW and SOW Amendment are referred to herein collectively as the "Agreement."

### 2.     The Terms of the Agreement for CCI's portion of the CIGNA Project

59.     CIGNA hired XBS to replace CIGNA's prior vendor for human resources, payroll and benefit services management.  Part of the project included an upgrade of CIGNA's PeopleSoft software system.  XBS hired CCI to perform the upgrade from PeopleSoft version 8.9 to 9.1, including development, coding, testing and customizations.

60.     The Agreement, specifically the SOW, included a fixed price for CCI's services for the CIGNA Project, totaling $3,149,825.00 to be paid by XBS.  The SOW provided a specific invoicing schedule for payments.

61.     As part of the Agreement and CCI's work, Appendix K to the SOW required CCI to meet certain Critical Transition Milestones ("Milestones"), *i.e.* interim and final completion dates for different portions or phases of the project.  One of the specifically listed Milestones was the "go live" date set for January 3, 2012.

62.     The Agreement also provided for remedies should CCI fail to meet a Milestone or to complete the project as a whole.

63.     First, in Appendix K of the SOW, the same section that listed the Milestones and their dates, the SOW includes a provision that states "[i]f any Critical Transition Milestone date

---

[1]     The SOW was previously linked to the 2009 MSA, which was replaced in full by the 2011 MSA.

is missed[,] Client [XBS] will stop payments to CCI [CCI] until such time that the Critical Transition Milestone is complete."

64.     Second, Section 5.2.3 of the SOW provides that if CCI fails to successfully complete any Critical Transition Milestone by the specified date in the Agreement, then XBS is permitted to pursue and recover its damages as a result of such failure.

65.     Third, the MSA provides in Section 3B that "[f]ailure of Supplier [CCI] to so complete any such SOW through the full duration specified therein will entitle ACS [XBS] to seek to recover from Supplier all costs and damages (including, without limitation, lost profits) arising out of Supplier's failure to complete the SOW through the full duration specified therein unless such SOW is terminated by ACS [XBS] without cause or for its convenience."

66.     Fourth, Section 18 of the MSA provides for indemnification by CCI in favor of XBS for, among other things, the "willful misconduct or gross negligence of [CCI,] its agents or employees."  The indemnification provision provides that CCI will pay all liabilities, damages, expenses, recoveries, judgments, costs, losses, penalties and fines assessed against XBS. The indemnification also survives termination of the MSA and remains in effect with respect to any occurrence or claim that broadly arose out of or in connection with the MSA.

**B.     CIGNA Project Begins in Late 2010**

67.     The CIGNA Project kicked off in late 2010, with planning and preparation by both XBS teams and CCI teams.  For the first several months, the CIGNA Project generally appeared to proceed as envisioned.  CCI created a plan for its end-to-end upgrade of the PeopleSoft platform.  CCI put a work plan in place and provided updates to XBS as the CIGNA Project progressed.  Throughout the early part of the spring and summer of 2011, CCI reported positive progression for its tasks, though CCI did miss an early Milestone by approximately one

month.

68.     CCI designated items on its reports with a green color status to denote they were proceeding on schedule.[2] CCI and XBS had regular and frequent status meetings, at which CCI reported a positive status and progression.  CCI made numerous representations directly to XBS that it would be completing its tasks on time.

69.     Although CCI missed its first Milestone in April, it generally reported a positive status throughout the spring and summer. Then, in late July 2011, CCI began reporting that it was getting behind on certain portions of the CIGNA Project.  Around the same time, CIGNA started questioning the positive nature of CCI's weekly reports, and XBS began pressing CCI for confirmation of their accuracy.

70.     By mid-August 2011, CCI had moved its open project tasks from green status to yellow status.  On August 19, 2011, CCI's internal project manager emailed the XBS team detailing the progress of all items on CCI's list, disclosing, for the first time, that the PeopleSoft implementation would be in yellow status until September 24, 2011—the date on which all development and unit testing was to be completed by CCI on the project. CCI would go on to miss five of the seven remaining Milestones.

**C.      CCI Misrepresents the Status of Development and Testing of the PeopleSoft Upgrade**

71.     From mid-August to mid-September, CCI's portion of the CIGNA Project was in yellow status, but CCI assured XBS that it would meet its September 24, 2011 Milestone and that the status would return to green.

72.     Indeed, on a conference call on August 5, 2011, CCI represented that it would

---

[2]      A green status signified that the project task was progressing and would be completed on time. A yellow status signified a potential for delay because of issues arising, and a red status signified a serious issue that meant a deadline was not likely to be met.

have the full development of the PeopleSoft upgrade completed by the second week of August. Two days later, CCI's Project Manager, Becky Hutcherson, wrote that the development would not be completed by August 7, 2011, but was scheduled to be done "later in the month" of August.

73.     August came and went, and CCI failed to complete development and testing as represented.

74.     Later, on or about September 7, 2011, Hutcherson stated to XBS that development for the September 24, 2011 Milestone would be finished *on time*.

75.     As set forth below, these representations were false, and Ms. Hutcherson and CCI intended that XBS rely on those representations in order to mask the true status of CCI's project status.

**D.     CCI Comes Clean On Its Project Status**

76.     On September 15, 2011, XBS discovered—through CIGNA—that specific work had not been completed by CCI for the September 24 Milestone. When approached by XBS, CCI confirmed the report.  On September 21, 2011 – three days before the Milestone deadline – CCI confessed that it would not completed such development and testing *until mid-October* at the earliest.

77.     XBS immediately asked for an explanation.  CCI provided no substantive or legitimate response or justification.  As XBS continued to seek information from CCI, XBS's own investigation revealed that CCI had not completed, and in some cases had not even started, large portions of the work that was due September 24, 2011.

78.     CCI failed to meet its September 24 Milestone.

79.     The representations described above were false when CCI or its representatives

made them or were made with a reckless disregard for the truth because CCI knew or should have known much earlier in the spring or summer that it would not have development of the PeopleSoft upgrade completed by late August. Indeed, CCI knew or should have known that it would not even make its contractual deadline—September 24—to complete development and testing.

80.     Additionally, CCI continually failed to provide XBS with honest assessments or updates on its project status. XBS relied on these omissions and the affirmative representations of Ms. Hutcherson. These omissions, along with Hutcherson's misrepresentations, were willful acts of misconduct that impaired XBS's ability to assess the Project's progress and caused further and more significant delays to the CIGNA Project, damaging XBS. Had CCI not made material misrepresentations or omissions, XBS could have made contingency plans to address CCI's failings. CCI did not give XBS that opportunity—until it was too late. As a result of CCI's willful misconduct, XBS had no choice but to pay enormous costs and penalties to third parties.

**E.     XBS Notifies CCI that CCI Breached the Agreement.**

81.     On October 7, 2011, XBS notified CCI that it was in breach of the Agreement for, among other things, failing to complete the September 24, 2011 Milestone and for CCI's delay in providing several other key deliverables under the SOW. XBS further notified CCI that XBS had the right to withhold payment under the Agreement until CCI completed the missed the Critical Transition Milestone. CCI responded in writing a full week later, agreeing in part to XBS's contentions.

82.     In mid-October 2011, XBS determined that the "go live" date of January 3, 2012, was in jeopardy. At that time, XBS reached out to CCI to discuss preparing a joint deferral plan

to present to CIGNA.  CCI refused to help XBS with the plan.

83.     In order to prevent additional delays, XBS began working seven days a week and requested that CCI do the same.  XBS held numerous meetings and calls in order to track the status of CCI's portion of the CIGNA Project, but CCI, in many instances, simply failed to attend the meetings or participate on the calls.

84.     On November 4, 2011, Deloitte, an outside consultant which had audited the project once CCI's failures jeopardized the "go live" date, presented its Go Live Readiness Assessment.  Deloitte's assessment was clear: the PeopleSoft component of the CIGNA Project (for which CCI was solely responsible) was not ready and would not be ready by the "go live" date.

85.     Following the presentation, XBS continued to press CCI on its deliverables.

**F.      CCI Abandons the CIGNA Project.**

86.     On January 19, 2012—sixteen days after CCI missed the "go live" date—CCI sent a letter to XBS notifying it of an alleged breach of the Agreement due to XBS's withholding of payment. CCI demanded payment of $749,366.00 from XBS.  CCI sent this letter despite having not completed its portion of the CIGNA Project.  CCI gave XBS ten days to make the payment if XBS wanted to avoid termination.

87.     During the same time frame, CCI began pulling team members off the CIGNA Project.  By the end of January 2012, CCI stopped work completely.  CCI's actions had already forced XBS to utilize another consulting firm to assist with staffing the project late in 2011. After the decision was made to replace CCI entirely—for its failure to complete its deliverables and near-abandonment of the CIGNA Project—CCI refused to assist the new firm in transitioning.   Thus, CCI failed to complete the SOW through the full duration specified in the

SOW, entitling XBS to seek to recover from CCI all costs and damages (including, without limitation, lost profits) arising out of CCI's failure to complete the SOW.

88.     As a result of CCI's failure to meet the Milestones, including the "go live" date, and its complete abandonment of the CIGNA Project in January 2012, XBS was forced to turn the entire PeopleSoft portion of the project over to the new consulting firm for completion. The PeopleSoft portion finally went live in July 2012, some seven months after the original "go live" deadline.

## G.     CCI's Wrongful Conduct Has Damaged XBS.

89.     CCI's fraudulent representations, willful misconduct, and failure to meet the milestones and to complete its portion of the CIGNA Project has damaged XBS severely.

90.     Specifically, CCI's actions have damaged XBS as follows: (1) $1,656,825.00 in payments to CCI by XBS under the SOW; (2) cost of procurement by XBS of a new subcontractor at a premium hourly rate  to complete (and in some cases redo) CCI's work; (3) lost profits from the delay in the "go live" date; (4) consequential damages for which indemnification is sought, including millions of dollars in payments to CIGNA, directly resulting from CCI's willful misconduct and its failure to meet Critical Transition Milestones and the "go live" date; and (5)  lost business opportunities while completing the CIGNA Project seven months late.

### CAUSES OF ACTION

### COUNT I: BREACH OF CONTRACT

91.     XBS incorporates the foregoing paragraphs, as if set forth fully herein.

92.     XBS and CCI entered into a valid, enforceable contract as set forth above.  XBS is a proper party to the contract and has performed its contractual obligations.

93.     CCI has breached the contract by failing to meet the Critical Transition Milestones, by failing to complete its contractual obligations, specifically the upgrade of the PeopleSoft software system.  CCI's breach has caused injury and damages to XBS.

94.     All conditions precedent to XBS's rights under the Agreement, as defined herein, have been performed, have occurred or were excused.  XBS, therefore, seeks damages pursuant to Section 5.2.3 of the SOW and under Section 3B of the MSA.

## COUNT II: FRAUD

95.     XBS incorporates the foregoing paragraphs, as if set forth fully herein.

96.     CCI made material false representations and omissions regarding the project status to XBS as set forth herein.

97.     CCI made false representations regarding the project's progress recklessly or knowingly, with the intent that XBS rely on them.  Such false representations and omissions were willful acts of misconduct.  Through its omissions, CCI failed to provide XBS with notice of impending delays and missed deadlines.

98.     XBS relied on CCI's representations and omissions, which caused injury to XBS.  XBS would have sought alternative measures to meet its time sensitive responsibilities had it been provided with an accurate account of CCI's progress.  Instead, XBS was held accountable by its client for missed deadlines and injured.

## COUNT III: DECLARATORY RELIEF

99.     XBS incorporates the foregoing paragraphs, as if set forth fully herein.

100.    XBS is a person interested under a written contract whose rights, status and legal relations are affected by that contract.  As a result, XBS asks the Court to enter a declaratory judgment against CCI as follows:

    (i)       XBS is entitled to indemnification by CCI pursuant to Section 18 of the 2011 Master Services Agreement for all liabilities, damages, expenses, costs, losses, penalties fines and executions, including attorneys' fees, resulting from CCI's willful misconduct, conduct which included but is not limited to CCI's failure to provide XBS with honest assessments or updates on its project status and CCI's and its agents' misrepresentations regarding the status of the PeopleSoft upgrade;

    (ii)      CCI has an obligation under Section 18 of the 2011 Master Services Agreement to repay to XBS all amounts paid in the categories listed above by XBS to third parties for CCI's willful misconduct; and

    (iii)    XBS's rights to recover, as set forth in the indemnification provision of the 2011 Master Services Agreement, do not violate relevant indemnification law and do not violate public policy.

101.    XBS requests such damages in excess of any liability cap that may imposed pursuant to Section 19 of the MSA, as claims for indemnification are specifically excepted from such provision.

### ATTORNEY'S FEES

102.    CCI's breaches have caused XBS to retain the undersigned counsel to enforce the Agreement, defined herein, and to recover damages suffered by XBS.  XBS presented its claim to CCI but payment for the just amount owed was not tendered within the expiration of the 30th day after the claim was presented.  Accordingly, XBS seeks its reasonable attorneys' fees and costs pursuant to Chapter 38 of the Texas Civil Practices and Remedies Code.

## <u>PRAYER</u>

WHEREFORE, Defendant Xerox Business Services, LLC, respectfully prays for judgment against Plaintiff CedarCrestone, Inc. as follows:

      a.      Actual damages against Defendant;

      b.      Declaratory relief as set forth above;

      c.      Reasonable attorneys' fees and costs, both through trial and in the event of an appeal;

      d.      Pre-judgment and post-judgment interest as provided by law; and

      e.      Such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Date: July 11, 2014                              Respectfully submitted,


                                    _/s/ Steven G. Schortgen_____
                                    Steven G. Schortgen, Lead Counsel
                                      Texas State Bar No. 00794603
                                      steve.schortgen@klgates.com
                                    Craig W. Budner
                                      Texas State Bar No.03313730
                                      craig.budner@klgates.com
                                    Ann Marie Arcadi
                                       Texas State Bar No. 00786994
                                       annmarie.arcadi@klgates.com
                                    Jennifer Klein Ayers
                                       Texas State Bar No. 24069322
                                       jennifer.ayers@klgates.com
                                    Jack J. Stone
                                       Texas State Bar No. 24083592
                                       jack.stone@klgates.com

                                    K&L Gates LLP
                                    1717 Main St.
                                    Suite 2800
                                    Dallas, TX  75201
                                    214.939.5500
                                    214.939.5849 Facsimile


                                    **ATTORNEYS FOR AFFILIATED COMPUTER
                                    SERVICES, LLC, n/k/a XEROX BUSINESS
                                    SERVICES, LLC**


                        **CERTIFICATE OF SERVICE**

       Pursuant to Local Rule 5.1(d), I certify that all counsel of record who have appeared in
this case received a copy of this document via the Court's CM/ECF system on July 11, 2014.



                                     _/s/ Steven G. Schortgen_____
                                     Steven G. Schortgen



**DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM** – Page 21