**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CEDARCRESTONE, INC.,** | § | |
| **Plaintiff,** | § | **Civil Action No. 3:12-cv-4673** |
| **v.** | § | |
| **AFFILIATED COMPUTER SERVICES, LLC n/k/a XEROX BUSINESS SERVICES, LLC** | § | **JURY TRIAL REQUESTED** |
| **Defendant.** | § | |

**PLAINTIFF'S ANSWER TO**
**DEFENDANT'S FIRST AMENDED COUNTERCLAIMS**

Plaintiff/Counter-Defendant CedarCrestone, Inc. ("CedarCrestone") files its Answer to the First Amended Counterclaims of Defendant/Counter-Plaintiff Affiliated Computer Services, LLC n/k/a Xerox Business Services, LLC ("Xerox") and states as follows:

## GENERAL DENIAL

Pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, CedarCrestone denies generally all claims not specifically admitted herein.

## RESPONSES TO SPECIFIC AVERMENTS

CedarCrestone responds as follows to the averments contained in the following numbered paragraphs of Xerox's Amended Counterclaims:

### I. Nature of Action

1. Admit that CedarCrestone brought counterclaims for breach of contract, fraud, and for declaratory relief. The contracts were originally entered into with ACS. The terms of the contracts at issue speak for themselves. Deny that the remainder of paragraph 1 is complete or accurately characterizes the relevant facts and the terms of the contracts.

2. Deny the allegation that CedarCrestone "failed to meet" all critical deadlines. Any material delays in target deadlines resulted from, and are excused by, the actions of Xerox and others. CedarCrestone lacks knowledge or information sufficient to form a belief about the truth of the allegation that Xerox "began making contingency plans to get the software upgrade completed as quickly as possible," and therefore denies that allegation. The remaining allegations in paragraph 2 are denied.

3. Denied.

4. Denied.

5. Admit.

6. Admit except that the contract was originally in the name of ACS.

7. Admit execution of the SOW, the terms of which speak for themselves.

8. Admit execution of the MSA, the terms of which speak for themselves.

9. Admit that Xerox replaced CIGNA's prior vendor for human resources, payroll and benefit services management. CedarCrestone lacks knowledge or information sufficient to form a belief about the CIGNA's motivation for hiring Xerox. Admit that part of Xerox's work for CIGNA included the PeopleSoft Upgrade of the CIGNA system, but expressly denied that Xerox hired CCI to perform the upgrade from PeopleSoft version 8.9 to 9.1, including development, coding, testing, and customization.

10. Admit except that the fixed price totaled $3,149,826.00.

11. Admit that Appendix K to the SOW sets out certain Critical Transition Milestones, the content of which speak for themselves.

12. Admit that CedarCrestone is a party to the Agreement, the terms of which speak for themselves.

13. Admit that CedarCrestone is a party to the Agreement, the terms of which speak for themselves.

14. Admit that CedarCrestone is a party to the Agreement, the terms of which speak for themselves.

15. Admit that CedarCrestone is a party to the Agreement, the terms of which speak for themselves.

16. Admit that CedarCrestone is a party to the Agreement, the terms of which speak for themselves.

17. CedarCrestone admits that the CIGNA Project began in late 2010, with planning and preparation by both Xerox teams and CedarCrestone teams. Deny that the balance of paragraph 17 accurately summarizes or characterizes the progression of the project.

18. Admit only that CCI accurately and timely advised Xerox as to the progression of CCI's work, through status reports, meetings, and various other means. Expressly deny that CCI only reported positive status and progression, and expressly deny any implication that CCI's reporting of positive status and progression was untimely, inaccurate, or untruthful.

19. Admit that the project fell behind, but deny that paragraph 19 accurately summarizes or characterizes the progression of the project or causes for the delays, and expressly deny that CCI missed its first milestone in April.

20. Admit that by mid-August 2011, CedarCrestone had moved certain PeopleSoft upgrade tasks from green status to yellow status. Admit that CedarCrestone's internal project manager emailed the Xerox team on August 19, 2011, the content of which speaks for itself. Expressly denied that CCI would go on to miss five of the seven remaining milestones.

21. Admit that by mid-August 2011, CedarCrestone had moved certain PeopleSoft upgrade tasks from green status to yellow status. Deny that the balance of paragraph 21 accurately summarizes or characterizes the referenced events.

22. Denied.

23. Denied.

24. Denied.

25. Denied.

26. Denied.

27. CedarCrestone lacks knowledge or information sufficient to form a belief about the truth of the allegation that "it became apparent that CedarCrestone completed, and in some cases had not even started, large portions of the work that was due on September 24, 2010" and therefore denies the allegations. Deny that the balance of paragraph 27 accurately summarizes or characterizes the referenced events.

28. Admit that the milestone was not met by the stated date but deny that CedarCrestone was responsible for the delay.

29. Denied.

30. Denied.

31. CedarCrestone admits that it received a letter from Xerox dated October 7, 2011, the content of which speaks for itself. CedarCrestone denies that it was in breach of the Agreement. CedarCrestone admits that it responded in writing, the content of which speaks for itself.

32. Denied.

33. Denied.

34. Admit only Deloitte audited the project and presented a report, the content of which speaks for itself. Expressly deny the remaining allegations of paragraph 34.

35. Admit.

36. Admit CedarCrestone sent a letter to Xerox on January 19, 2012, the content of which speaks for itself. Deny that the balance of paragraph 36 accurately summarizes or characterizes the referenced events.

37. Denied.

38. Denied.

39. Denied.

40. Denied.

## II. Count I: Breach of Contract

41. CCI incorporates its responses to the foregoing paragraphs, as if set forth fully herein.

42. Admit only that CedarCrestone entered into a valid contract (originally with ACS), the content of which speaks for itself. CedarCrestone expressly denies that ACS/Xerox met all its contractual obligations.

43. Denied.

44. Denied.

## III. Count II: Fraud

45. CCI incorporates its responses to the foregoing paragraphs, as if set forth herein.

46. Denied.

47. Denied.

48. Denied.

## IV. Count III: Declaratory Relief

49. CCI incorporates its responses to the foregoing paragraphs, as if set forth herein.

50. Admit that CedarCrestone entered into a valid contract (originally with ACS), the content of which speaks for itself, and that Xerox seeks the specified relief, but expressly denied that Xerox is entitled to such relief.

51. Admit that Xerox seeks the requested relief, but expressly denied that Xerox is entitled to such relief.

## V. Attorneys' Fees

52. CedarCrestone denies that Xerox is entitled to attorney's fees.

## VI. Prayer

CedarCrestone denies the allegations contained in the Prayer of Xerox and denies that Xerox is entitled to any of the relief requested.

## AFFIRMATIVE DEFENSES

1. Xerox's claims are barred, in whole or part, by the express terms and limitations of the contracts, including but not limited to the following provisions:

   a. Paragraph 5.B of the MSA, which permits termination for cause "if the other Party materially breaches this Agreement, or the relevant SOW, as applicable, and fails to cure such breach within 10 days after written notice."

   b. Paragraph 19 of the MSA, which prevents either Party from being liable for "consequential, incidental, special, or indirect damages" and limits CedarCrestone's liability by capping Xerox's potential recovery to "the amount paid [CedarCrestone] by Xerox under the applicable SOW."

   c. Paragraph 5.2.3 of the SOW, which limits CedarCrestone's potential liability for failing to successfully complete any Critical Transition Milestone to "an amount not to exceed the actual Critical Transition Milestone Credit attendant to the Critical Transition Milestone at issue."

d. Paragraph 5.2.5 of the SOW, which excuses CedarCrestone's nonperformance of its obligations under the SOW if such nonperformance is due to certain acts or omissions of Xerox, CIGNA, and/or third parties acting on their behalf.

2. CedarCrestone is not liable to Xerox because Xerox's material breach of the agreement and Xerox's failure to cure said breach discharged CedarCrestone's obligations under the common law as well as Paragraph 5.B of the MSA. Xerox's failure to timely pay CedarCrestone amounts due under the contracts constitutes a material breach of the contracts. Xerox's repudiation of the contracts, whereby Xerox admitted to CedarCrestone that Xerox would not pay CedarCrestone either the outstanding amounts due under the contract or any additional amounts, but nonetheless expected CedarCrestone to continue to provide services, also constitutes a material breach of the contracts.

3. CedarCrestone is not liable to Xerox because CedarCrestone's performance was excused due to Xerox and CIGNA failing to provide necessary infrastructure, access and documentation, failure to perform Xerox's obligations under the contracts, and due to the acts and/or omissions of Xerox, CIGNA, and/or third parties acting on their behalf that hindered, delayed, and/or prevented CedarCrestone's ability to perform its obligations under the MSA and the SOW.

4. CedarCrestone is not liable to Xerox because Xerox repudiated the contracts when, without excuse, Xerox indicated by unconditional words and/or actions that it would not perform the contracts and would not pay CedarCrestone either the outstanding amounts due under the contracts or any additional amounts, but nonetheless expected CedarCrestone to continue to provide services. Thus, CedarCrestone's obligations under the contracts were discharged.

5. CedarCrestone is not liable to Xerox because CedarCrestone's performance was excused due to impossibility of performance caused by the acts and/or omissions of Xerox, CIGNA, and/or third parties acting on their behalf.

6. Should any liability be assessed against CedarCrestone, which is denied, then Xerox's claims are barred, in whole or part, for failure to mitigate Xerox's alleged damages.

7. Should any liability be assessed against CedarCrestone, which is denied, Xerox's claimed damages are limited/capped by Paragraph 19 of the MSA ("Supplier's liability shall in no event exceed the amounts paid Supplier by Xerox under the applicable SOW."), and Paragraph 5.2.3 of the SOW ("to an amount not to exceed the actual Critical Transition Milestone Credit attendant to the Critical Transition Milestone at issue.").

8. CedarCrestone is not liable to Xerox for the types and/or categories of damages sought by Xerox because Paragraph 19 of the MSA bars recovery of "consequential, incidental, special, or indirect damages. . . ."

9. CedarCrestone is not liable to Xerox for any Critical Milestone Credits set out in Appendix K to the SOW because such credits are unenforceable penalties under Texas law.

10. CedarCrestone is not liable to Xerox for the amount of damages claimed because CedarCrestone is entitled to an offset and credit, including but not limited to the amounts it has sought in this lawsuit from Xerox.

11. CedarCrestone is not liable to Xerox because Xerox's own acts or omissions proximately caused or contributed to Xerox's injuries.

12. CedarCrestone is not liable to Xerox because ACS failed to perform all conditions precedent. CedarCrestone alleges that Xerox failed to perform one or more conditions precedent to enforcing its claims under the Agreement, including but not limited to its failure to

competently and timely provide necessary infrastructure, access and documentation; failed to sufficiently perform all of its project management and other duties; failed to follow all contract procedures; and failed to make timely payments to CedarCrestone. These obligations constitute conditions precedent or, alternatively, material contractual duties that Xerox breached.

13. Any breach or failure to perform by CedarCrestone is excused by Xerox's anticipatory repudiation of the contracts whereby Xerox indicated by its words and/or actions that ACS was not going to perform its obligations under the contracts in the future in that Xerox did not intend to pay CedarCrestone the monies owed to CedarCrestone under the contracts.

Date: March 6, 2015

Respectfully submitted,

**DYKEMA GOSSETT PLLC**

By: /s/ *Thomas M. Hanson*
Brian A. Colao
State Bar No. 00793528
Thomas M. Hanson
State Bar No. 24068703
Christine A. Nowak
State Bar No. 24050200
1717 Main Street, Ste. 4000
Dallas, Texas 75201
214-462-6400 (Telephone)
214-462-6401 (Fax)
thanson@dykema.com
**ATTORNEYS FOR PLAINTIFF CEDARCRESTONE**

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 6th day of March, 2015, a true and correct copy of the foregoing document was delivered via electronic means using the ECF system pursuant to Fed. R. Civ. P. 5(b)(2)(D) and Local Rule 5.1, to all counsel of record.

/s/ *Thomas M. Hanson*
Thomas M. Hanson